IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NETFLIX, INC., SECURITIES LITIGATION<br><br>This Order Also Relates To:<br>  ALL CONSOLIDATED ACTIONS<br>and<br>  FRANK J. FISH,<br>      Plaintiff,<br>    v.<br>  NETFLIX, INC., et al.,<br>      Defendants. | Case No. 12-0225 SC<br><br>ORDER CONSOLIDATING CASES AND APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL<br><br><br><br><br>Case No. 12-1030 LHK |

I. **INTRODUCTION**

This case is a putative securities class action arising from allegations of false and misleading statements in violation of the federal securities laws. Now before the Court are six competing motions to appoint the proposed class's lead plaintiff and approve lead counsel, as well as a motion to consolidate Fish v. Netflix, Inc., et al., Case No. 12-1030-LHK (the "Fish action"). Having reviewed the papers and heard oral argument, the Court GRANTS the

motion of Arkansas Teacher Retirement System ("Arkansas Teacher") and State-Boston Retirement System ("Boston") (collectively, "Arkansas Teacher-Boston") and appoints them as Lead Plaintiffs. Accordingly, the Court DENIES the other five motions to serve as lead plaintiff.  The Court APPROVES Arkansas Teacher-Boston's selection of the firm of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel, with Zelle Hofmann Voelbel & Mason LLP ("Zelle Hofmann") serving as Local Counsel.  The Court GRANTS the motion to consolidate brought by Frank J. Fish, Anita and Roger Wilson, and Nancy Comstock (collectively, the "Fish Group").

**II. BACKGROUND**

Defendants Reed Hastings, David B. Wells, Theodore A. Sarandos, Leslie J. Kilgore, and Neil D. Hunt are officers of Defendant Netflix, Inc. (collectively, "Netflix").  Netflix provides a popular online service that allows subscribers to watch films and other content streamed over the Internet and, in the United States, to have such content home-delivered through the mail.  The Plaintiffs and Movants in this case are investors who held shares of Netflix stock between December 20, 2010 and October 24, 2011 (the "class period").  They allege that Netflix concealed negative trends in its business, particularly regarding its relationships with content providers, and that the revelation of these negative trends resulted in a drop in Netflix's stock price and, thus, losses to investors.

On January 13, 2012, the City of Royal Oak Retirement System became the first investor to file suit against Netflix (the "City

2

of <u>Royal Oak</u> action"). ECF No. 1.[1] On the same day, plaintiff's counsel in that case published notice of the action in the <u>Business Wire</u>, as required by the Private Securities Litigation Reform Act ("PSLRA"). <u>See</u> Stocker Decl. Ex. C.[2] The notice informed investors of the pendency of the action and of the class period, generally described the factual allegations and claims, and told potential class members that they had sixty days to move this Court to be appointed lead plaintiff. <u>Id.</u>

Seven such motions followed. One of them, filed by Irina Belenkova, was later withdrawn. ECF Nos. 25, 67. The six remaining motions are now pending before the Court. The motions were filed by: (1) Asbestos Workers Philadelphia Pension Fund ("Asbestos Workers"), ECF No. 17; (2) Duane Labbee ("Labbee"), ECF No. 22; (3) the Fish Group, ECF No. 23; (4) LBBW Asset Management Investmentgesellschaft mbH and the Police and the Fire Retirement System of the City of Detroit (collectively, the "Institutional Investors"), ECF No. 28; (5) Arkansas Teacher-Boston, ECF No. 32; and (6) Alaska Electrical Pension Fund and Locals 302 and 612 of the International Union of Operating Engineers-Employers

---

[1] Shortly afterwards, two other putative class actions were filed in this district. The Court related and consolidated one of those actions into the above-captioned action ("<u>In re Netflix</u>"). ECF No. 16. The other action was brought by movant Frank J. Fish and, as explained in Section IV.A <u>infra</u>, shall be consolidated with <u>In re Netflix</u> pursuant to this Order. In addition to the class actions, the Court is aware that at least four derivative lawsuits have been filed, two in this Court and two in the California Superior Court for the County of Santa Clara. ECF No. 52. One of the federal derivative lawsuits was already consolidated with this action. ECF No. 74. The Court does not presently have before it any motions concerning the other derivative lawsuits and does not address them here.

[2] Attorney Michael W. Stocker of Labaton Sucharow filed a declaration in support of Arkansas Teacher-Boston's motion. ECF No. 37 ("Stocker Decl.").

3

1  Construction Industry Retirement Trust (collectively, "Alaska
2  Electrical"), ECF No. 44.  After the first round of motions, three
3  movants -- the Institutional Investors, Alaska Electrical, and
4  Asbestos Workers -- filed statements of non-opposition to Arkansas
5  Teacher-Boston's motion.  ECF Nos. 58, 59, 61.  Additionally,
6  Labbee has effectively withdrawn by failing to make any filings
7  after his first or appear at oral argument.  Thus, only two
8  contenders remain: the Fish Group and Arkansas Teacher-Boston.[3]
9      The Fish Group consists of three individual investors, Frank
10 J. Fish, Anita and Roger Wilson, and Nancy Comstock.[4]  Fish
11 certifies that he suffered a loss of $865,977.00.  Houston Decl. ¶
12 4, Ex. B.[5]  The Wilsons certify that they suffered losses of
13 $617,963.44.  Id. ¶ 6, Ex. C.  Comstock certifies that she suffered
14 losses of $583,855.85.  Id. ¶ 8, Ex. D.  All three certifications
15 were made on forms bearing the logo and name of Newman Ferrara LLP
16 ("Newman Ferrara"), a law firm whose connection to this lawsuit is
17 presently unknown.  See id. Exs. B, C, D.  Comstock's certification
18 was signed by both Comstock and Roy Hurst, and offers as proof of
19 Comstock's losses a printout of a website displaying the trading
20 record for an account held by "Nancy Comstock TTEE."  Id. Ex. D.
21 Comstock declares that she and Hurst are married; that the account

---

[3] Their motions are fully briefed.  ECF Nos. 23 ("Fish Mot."), 32 ("ATB Mot.") 60 ("Fish Response"), 62 ("ATB Response"), 69 ("Fish Reply"), 73 ("ATB Reply").

[4] The Fish Group treats Anita and Roger Wilson, a married couple, as a single investor.  Because the Court's decision in this matter is unaffected by whether the Fish Group contains three or four members, the Court accepts this figure.

[5] Attorney Matthew M. Houston of Harwood Feffer LLP ("Harwood Feffer") filed a declaration in support of the Fish Group's motion. ECF No. 23 ("Houston Decl.").

4

in which they traded Netflix stock is the Nancy Comstock Trust ("Comstock Trust"); that Comstock is the trustee of the Comstock Trust; that Hurst is the beneficiary of the trust and holds a Power of Attorney over the account; and that "[t]he account was principally set up in its present form for estate planning purposes." Comstock Decl. ¶¶ 2-3.[6] Taken together, the Fish Group claims losses of $2,067,796.29. Houston Decl. ¶ 9. None of the Fish Group's members have ever served or sought to serve as lead plaintiff in a securities class action. See id. Exs. B, C, D. The members of the Fish Group admit that they had no relationship before this litigation. Fish Reply at 4-5.

Arkansas Teacher-Boston consists of two institutional investors. Their counsel has provided a calculation of their respective losses using both the "First-In, First-Out" ("FIFO") and the "Last-In, First-Out" ("LIFO") accounting methods. Stocker Decl. Ex. B. According to these calculations, Arkansas Teacher suffered losses of $993,921.31 under either accounting method,

---

[6] After Arkansas Teacher-Boston filed its Response, Comstock and Hurst jointly executed a declaration supporting the Fish Motion. ECF No. 72 ("Comstock Decl."). Arkansas Teacher-Boston, pointing to the PSLRA's sixty-day period to file motions for appointment as lead plaintiff, objects to the Comstock Declaration as an untimely supplement to the claims and information contained in the initial Fish Motion. ATB Reply at 4 n.6 (citing Miller v. Dyadic Int'l, Inc., No. 07-80948-CIV, 2008 WL 2465286, at *5 (S.D.Fla. Apr. 18, 2008)). But Miller, like other cases concerning supplementation, focuses on the practice of supplementing initial motions to manipulate the size of a group or its losses, not "supplements" that merely clarify earlier statements. See, e.g., In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 440 (S.D. Tex. 2002) (finding that filing of additional information after sixty-day period "did not violate the spirit or purpose of the PSLRA and its express time deadlines" because requisite information about group member had been included in earlier filing and therefore amendment "did not 'supplement' the group"). The Court therefore accepts the Comstock Declaration, although, as detailed in Section IV.B.1 infra, the declaration does not cure the defects in the Fish Group's motion.

while Boston suffered losses of $725,269.31 under the FIFO method and $438,243.26 under the LIFO method. Id. Taken together, Arkansas Teacher-Boston claims losses of $1,719,190.62 under the FIFO method or $1,432,164.56 under the LIFO method. Id. Arkansas Teacher certifies that, in the last three years, it has sought to serve as lead plaintiff in federal securities class actions ten times and has been appointed six times. Id. Ex. A. Boston certifies that, in the last three years, it has sought to serve as lead plaintiff in federal securities class actions six times and has been appointed three times. Id. Arkansas Teacher and Boston represent that they had a pre-existing relationship before this litigation. ATB Mot. at 10; ATB Response at 11; ATB Reply at 8.

### III. **LEGAL STANDARD**

Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . . in accordance with this subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(i). "The 'most capable' plaintiff -- and hence the lead plaintiff -- is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of [Federal Rule of Civil Procedure] 23." In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002).

The PSLRA directs district courts to appoint the lead plaintiff through a three-step process. In the first step, the first plaintiff to file an action covered by the PSLRA must publicize the pendency of the action, the claims made, the purported class period, and the right of other members of the

6

purported class to move to serve as lead plaintiff. In re Cavanaugh, 306 F.3d at 729.

In the second step, the district court identifies the presumptive lead plaintiff. Id. at 729-30. The PSLRA creates a rebuttable presumption that the lead plaintiff shall be the one who: (1) filed the first complaint or brought a motion for appointment of lead counsel in response to the publication of notice; (2) possesses the "largest financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of FRCP 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). To determine the size of each movant's financial interest, "the court may select accounting methods that are both rational and consistently applied." In re Cavanaugh, 306 F.3d at 730 n.4. The district court's Rule 23 inquiry focuses on the requirements of "typicality" and "adequacy." Id. at 730.

In the third step, other candidates have the opportunity to rebut the presumption that the putative lead plaintiff identified in step two can adequately represent the class. Id. By statute, this presumption is rebuttable in only two ways: proof that the presumptive plaintiff either (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that make the plaintiff unable to adequately represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). If the presumption is successfully rebutted, the district court must turn to the movant with the next-largest financial interest and repeat the process, continuing sequentially until it identifies the most capable plaintiff. In re Cavanaugh, 306 F.3d at 731.

Once a lead plaintiff is appointed, the PLSRA gives the lead

plaintiff the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." Cohen v. U.S. Dist. Court, 586 F.3d 703, 712 (9th Cir. 2009).

**IV. DISCUSSION**

    **A. Consolidation**

"In securities actions where the complaints are based on the same public statements and reports[,] consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." Wenderhold v. Cylink Corp., 188 F.R.D. 577, 583 (N.D. Cal. 1999). In re Netflix and the Fish action are appropriate for consolidation. The operative complaints in both cases are based on the same public statements and reports, propose the same class period, set forth substantially identical legal claims and factual allegations, and name the same defendants. There has been no suggestion that consolidation will prejudice Netflix. Accordingly, the Court hereby CONSOLIDATES the Fish action with In re Netflix. The parties in the Fish action shall comply with the Court's previous consolidation order in In re Netflix. ECF No. 16.

    **B. Appointment of Lead Plaintiff**

The first step of the PSLRA's lead-plaintiff selection process is for the plaintiff who filed the first class action under the statute to publicize the action. See In re Cavanaugh, 306 F.3d at 729. This step was completed on January 13, 2012, when plaintiff's

8

counsel in the City of Royal Oak action published their notice in the Business Wire. The Court therefore proceeds to the second step of the selection process and "compare[s] the financial stakes of the various plaintiffs and determine[s] which one has the most to gain from the lawsuit." Id. at 730.

### 1.   The Fish Group

The Fish Group stakes its claim to being the presumptive lead plaintiff on the aggregated losses of its three members, which they calculate to be roughly $2 million. If accepted, this figure would surpass Arkansas Teacher-Boston's aggregated losses of roughly $1.7 million and make the Fish Group the presumptive lead plaintiff, assuming that the Fish Group could satisfy Rule 23. However, the courts of this circuit uniformly refuse to aggregate the losses of individual investors with no apparent connection to each other aside from their counsel. See, e.g., In re Network Assocs. Sec. Litig., 76 F. Supp. 2d 1017, 1019-1027 (N.D. Cal. 1999); Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1152-1154 (N.D. Cal. 1999); Wenderhold v. Cylink Corp., 188 F.R.D. 577, 586 (N.D. Cal. 1999). As one court recently explained:

> The rationale of courts in declining to appoint a group of unrelated persons as lead plaintiff varies widely. Some courts focus primarily on the underlying purposes of the PSLRA, which is to prevent lawyer-driven litigation, and which is undermined by allowing lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes because such a practice would allow and encourage lawyers to direct the litigation. [Citation.] Other courts have explained that one of the principal purposes of the PSLRA is to allow for institutional plaintiffs with big financial stakes and expertise in the area to serve as lead plaintiff and control the litigation. [Citation.] Other courts have found that unrelated groups of individuals, brought together solely for the purpose of aggregating their claims in an effort to become the presumptive lead plaintiff fail to meet the adequacy prong of Rule 23. [Citation.] Irrespective of

9

>whether courts reject the formulation because it is contrary to legislative intent or because it fails under Rule 23, the analysis and results are the same because acting contrary to the purposes of the PSLRA, which was designed to benefit class members, would also threaten the interests of the purported class.

Frias v. Dendreon Corp., No. C11-1291JLR, 2011 WL 6330179, at *4, --- F. Supp. 2d --- (W.D. Wash. Dec. 19, 2011) (internal quotation marks omitted).

The Court determines that the Fish Group is an unrelated group of individuals and accordingly declines to aggregate their individual losses. The Fish Group has made no showing of former ties or current cohesion. On the contrary, all signs point to the Fish Group having been recruited by one law firm, Newman Ferrara, and then transferred for reasons unknown to their present counsel, Harwood Feffer. The Fish Group has not marshaled any evidence to the contrary or issued a denial, despite having been challenged on this point by Arkansas Teacher-Boston both in the papers and at oral argument. ATB Response at 8. The Court takes this as an admission, and finds it to be a sufficient reason to decline to aggregate the individual claims of the Fish Group's members.

Even if the Court were to aggregate the Fish Group members' losses, the Court determines that the Fish Group could not satisfy the PSLRA's requirement that lead plaintiffs be subject to no "unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial. Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir. 2006); see also Eichenholtz v. Verifone Holdings, Inc., No. C07-06140MHP, 2008 WL 3925289, at *10-11 (N.D. Cal. Aug. 22, 2008) (refusing to appoint group that included day trader whose

presence might subject class to additional defenses). The point of this requirement is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole. See Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

The Court finds a substantial likelihood that a unique defense could be raised against a member of the Fish Group. Arkansas Teacher-Boston points out that Comstock is not actually the legal entity who held the account on which her calculation of losses is based. Rather, the Comstock Trust is. ATB Response at 6. The Court need not decide whether this fact would result in a valid defense, only whether it is substantially likely that the Fish Group -- and hence, the putative class -- could be forced to litigate against defenses arising from it. Comstock's presence among the Fish Group could subject the class to the burden of litigation focused on her standing. The Comstock Trust does not appear in the Fish Group's initial motion and did not assign its claims to Comstock. See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106-07 (2d Cir. 2008); see also In re Herley Indus. Inc. Sec. Litig., CIV.A. 06-2596, 2009 WL 3169888, at *12 (E.D. Pa. Sept. 30, 2009) (refusing to appoint as lead plaintiff an investment adviser who possibly lacked third-party standing). Arkansas Teacher-Boston argues persuasively that this may raise a colorable issue of whether Comstock herself, as a legal entity distinct from the Comstock Trust, has standing to bring a claim. Thus, even if the Court were to aggregate the Fish Group members' individual claims, the Fish Group would not satisfy the

PSLRA's typicality requirement. Accordingly, the Court looks to the movant with the next-largest financial interest in the litigation.

### 2. Arkansas Teacher-Boston

It is undisputed that Arkansas Teacher-Boston has the largest total losses of any group other than the Fish Group and that Arkansas Teacher, taken individually, has the largest loss of any individual movant. The Court must determine whether aggregation of Arkansas Teacher and Boston's losses is appropriate (which could result in appointment of the Arkansas Teacher-Boston group as a single lead plaintiff) or whether to treat the two institutional investors separately. The latter course would effectively put Boston out of the running and place Arkansas Teacher, as the movant with the greatest individual losses, solely in the pole position.

The Court determines that aggregation of Arkansas Teacher and Boston's losses is appropriate in this case because the two entities have shown a pre-existing relationship which indicates their cohesion and ability to "adequately control and oversee the litigation." Eichenholtz, 2008 WL 3925289, at *8 (citations omitted). Arkansas Teacher and Boston comprise, along with other institutional investors, the lead-plaintiff group currently prosecuting the ongoing Colonial Bancgroup securities fraud class action, In re Colonial Bancgroup, Inc. Securities Litigation, No. 09-CV-104 (M.D. Ala.) ("In re Colonial"). This collaboration makes Arkansas Teacher and Boston something more than unaffiliated strangers. Moreover, this Court takes judicial notice of the fact that the district court overseeing In re Colonial has preliminarily approved a partial settlement in that case. This evidence

1 demonstrates Arkansas Teacher and Boston's ability to adequately
2 prosecute complex securities litigation on behalf of a settlement
3 class and further confirms the propriety of aggregating Arkansas
4 Teacher and Boston's losses for purposes of the instant case.
5     Turning to the requirements of Rule 23, the Court finds that
6 Arkansas Teacher-Boston satisfies both the typicality and adequacy
7 prongs. "The typicality requirement is satisfied when the putative
8 lead plaintiff has suffered the same injuries as absent class
9 members, as a result of the same conduct by the defendants." In re
10 Diamond Foods, Inc., Sec. Litig., No. C 11-05386 WHA, 2012 WL
11 934030, at *3, --- F. Supp. 2d --- (N.D. Cal. Mar. 20, 2012)
12 (citing Hanon, 976 F.2d at 508). Both Arkansas Teacher and
13 Boston's purchases and sales of Netflix stock occurred in their own
14 names and during the class period. See Stocker Decl. Ex. A. The
15 losses they suffered arose from the same events as those of the
16 class and give rise to the same claims. As to adequacy, a district
17 court inquires "whether the class representative and [its] counsel
18 have any conflicts of interest with other class members and whether
19 the class representative and its counsel will prosecute the action
20 vigorously on behalf of the class." In re Diamond Foods, 2012 WL
21 934030, at *3 (quoting Staton v. Boeing Co., 327 F.3d 938, 957 (9th
22 Cir. 2003) (internal quotation marks omitted)). Arkansas Teacher
23 and Boston have the same interest in the litigation as the absent
24 class members -- to recover their losses. No showing has been made
25 that Arkansas Boston-Teacher or its counsel will fail to prosecute
26 the action vigorously. Moreover, Arkansas Teacher-Boston's
27 extensive lead-plaintiff experience, including their current
28 prosecution of In re Colonial, suggests that the group will be able

13

to effectively and efficiently control and oversee the litigation on behalf of the putative class.

The Fish Group argues that this very experience disqualifies the members of Arkansas Teacher-Boston as professional plaintiffs. The argument misapprehends both the spirit and the letter of the PSLRA. It is beyond dispute that Congress passed the PSLRA in part to encourage institutional investors such as Arkansas Teachers-Boston to take the lead in private securities class actions. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007); H.R. Conf. Rep. 104-369, at 33-35, reprinted in 1995 U.S.C.C.A.N. at 732-34. And the purpose of the PSLRA's discretionary bar against professional plaintiffs, codified at 15 U.S.C. § 78u-4(a)(3)(B)(vi),[7] "is to favor institutional investors over individuals such that a repeat individual lead-plaintiff candidate may be prevented from exceeding the statutory limit." In re Diamond Foods, 2012 WL 934030, at *4. Moreover, the bar is, by its plain language, discretionary, not absolute. The Court is not moved to disqualify Arkansas Teacher or Boston as a professional plaintiff only to turn and appoint the unrelated strangers of the Fish Group.

The Fish Group raises one last challenge to Arkansas Teacher-Boston's appointment. At oral argument, the Fish Group urged the Court to measure the "largest financial stake" as a percentage of

---

[7] Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C. § 78u-4(a)(3)(B)(vi).

losses relative to the investor's overall portfolio, on the premise that a small investor who has lost a greater percentage of her portfolio will be more motivated to pursue relief on behalf of the class than a relatively deep-pocketed investor whose losses, even if larger in an absolute sense, are smaller proportionally. The argument is unavailing. As Arkansas Teacher-Boston points out, a proportional measure would result in individual investors nearly always having the largest financial stake relative to institutional investors whose holdings frequently amount to hundreds of millions of dollars. Such a result would defeat the PSLRA's aim of putting institutional investors at the helm of more private securities class actions.

Because Arkansas Teacher-Boston satisfies Rule 23 and has combined losses that exceed those of any remaining movant, and because no movant has rebutted the presumption that Arkansas Teacher-Boston is the lead plaintiff in this putative class action, the Court appoints Arkansas Teacher-Boston as Lead Plaintiffs. Also, having reviewed the qualifications of Arkansas Teacher-Boston's counsel and observed them at oral argument, the Court approves Arkansas Teacher-Boston's selection of Labaton Sucharow as Lead Counsel, with Zelle Hofmann serving as Local Counsel.

**V.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion of Arkansas Teacher Retirement System and State-Boston Retirement System and appoints them as Lead Plaintiffs. Accordingly, the Court DENIES the other five groups' motions to serve as lead plaintiff. The Court APPROVES Labaton Sucharow LLP as Lead

15

1 | Counsel, with Zelle Hofmann Voelbel & Mason LLP serving as Local
2 | Counsel.  The Court GRANTS the Fish Group's motion to consolidate.
3 |     Lead Plaintiffs' counsel shall file a consolidated complaint
4 | within thirty (30) calendar days of this Order.  Netflix may then
5 | file an answer or motion to dismiss within thirty (30) calendar
6 | days after filing of the consolidated complaint.

8 |     IT IS SO ORDERED.

10 |     Dated:  April 26, 2012 

UNITED STATES DISTRICT JUDGE

16